UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

---

| | | |
|---|---|---|
| IN RE PRADAXA | ) | MDL No. 2385 |
| (DABIGATRAN ETEXILATE) | ) | 3:12-md-02385-DRH-SCW |
| PRODUCTS LIABILITY | ) | Judge David R. Herndon |
| LITIGATION | ) | |

---

**This Document Relates to:**

CHARLEEN A. GLASGOW,
Individually, and as Special
Administratrix of the Estate of        Case No.: 3:15-px-00122
RONALD D. GLASGOW,

v.

**BOEHRINGER INGELHEIM
PHARMACEUTICALS, INC.**

<u>ORDER</u>

**HERNDON, District Judge:**

## I.   INTRODUCTION

This matter is before the Court on the defendant's (Boehringer Ingelheim Pharmaceuticals Inc.) ("BIPI") motion, pursuant to the terms of the Pradaxa Product Liability Litigation Master Settlement Agreement ("MSA" or "Master Settlement Agreement"), to dismiss the above captioned case with prejudice (Doc. 4). Also pending is the plaintiff's motion to compel (Doc. 3). For the reasons discussed below, the motion to dismiss is **GRANTED**. The motion to compel is **DENIED**.

## II. BACKGROUND

### A. Master Settlement Agreement

On May 28, 2014, after an extensive mediation process, BIPI and the Pradaxa Claimants' Negotiating Counsel executed the MSA.[1] The negotiations that led to the MSA were vigorous, at arm's length, and in good faith. The MSA sets forth the timing and procedure for Pradaxa Claimants to opt-in to the voluntary settlement program. Specifically, each Pradaxa Claimant wishing to opt-in to the settlement was required to file an Opt-In Form, which was attached to the MSA as Exhibit 5. The Opt-In Form specifically provided that the election to opt-in to the settlement is irrevocable and that the Claimant is waiving all rights to pursue his or her claims in court. MSA Section 5.1

Charleen Glasgow, on behalf of Ronald Glasgow (deceased), executed the Opt-In Form on June 17, 2014, and Glasgow's counsel, Eric H. Weinberg, executed the Opt-In Form on July 2, 2014 (Doc. 4-1). The first paragraph of the Opt-In Form, entitled -"NOTICE OF RELINQUISHMENT OF RIGHTS BY 'OPTING IN'"- warns:

> By Opting In to this Agreement, Claimant and Claimant's Counsel, **acknowledge and agree that Claimant is waiving all rights to pursue his/her claims in court. Any further claims, appeals, or objections shall be resolved by the Special Master** as set forth in the Pradaxa Product Liability Litigation Master Settlement Agreement and Exhibits thereto, **and such decisions shall be final and binding upon Claimant and Claimant's counsel**.

(Doc. 4-1 emphasis added). As part of the opt-in process, Glasgow certified:

---

[1] The Court and the parties have been provided with a copy of the MSA.

> I, the undersigned Pradaxa Claimant, hereby certify that **I have been fully advised by my undersigned counsel of my rights** under the Pradaxa Product Liability Litigation Master Settlement Agreement ("Master Settlement Agreement"), as well **as the rights I will be waiving** by agreeing to participate in the Master Settlement Agreement. Having been so fully advised, **I elect to opt in to the Voluntary Settlement Program** established by the Master Settlement Agreement, **and acknowledge that such election is irrevocable**.

(Doc. 4-1) (emphasis added). Glasgow's counsel, Mr. Weinberg, also certified:

> As Counsel retained by the Pradaxa Claimant identified above, I hereby certify that **I fully advised my client, the Claimant, of his/her rights under the Master Settlement Agreement, as well as the rights he/she will be waiving** by agreeing to participate in the Voluntary Settlement Program established by the Master Settlement Agreement. **Claimant and Claimant's Counsel acknowledge that such election is irrevocable**.

(Doc. 4-1) (emphasis added).

### B. Glasgow Failed to Submit the Required Claims Package and, as a result, was Excluded From Participating in the Settlement

Under the MSA, each Participating Claimant was required to post to the Claims Administrator's secure portal a Claims Package Submission within thirty days of opting in to the settlement. MSA ¶ 7.1.[2] The MSA provides for strict compliance and unequivocally states that in the event any Participating Claimant who has not filed a lawsuit fails to submit their Claim Package, fails to seek an extension to submit a Claim Package, or fails to meet an extension deadline, the Defendants are allowed to make a motion before the Special Master to deny Participating Claimants the right to participate in the settlement. Additionally, the

---

[2] The MSA provided that "each Participating Claimant shall submit to the Claims Administrator, and shall post on the secure portal described below in subparagraph 7.1(g), a 'Claim Package Submission,' containing [the specified] information and executed forms." MSA ¶ 7.1

terms of the MSA explicitly provide that it was the expectation of the parties that such motion would be granted absent a showing of good cause that justifies non-compliance. *See* MSA ¶ 7.7.

Glasgow's Claims Package was not timely submitted to the Claims Administrator. This fact is not in dispute and is freely admitted by Glasgow. Because the Claims Package was not timely submitted, BIPI submitted to the Special Master a Motion to Deny Participation in the Settlement Pursuant to Section 7.7 of the MSA (Doc. 4-2). Glasgow submitted a response, and on December 22, 2014, the Special Master, Randi Ellis, granted Defendant's Motion to Deny Glasgow's Participation in the Settlement and found that Glasgow and his counsel failed to show good cause to justify the failure to meet the Claim Package deadlines (Doc. 4-3).

On December 29, 2014, Glasgow filed a Motion for Reconsideration with the Special Master and provided additional materials and exhibits. On January 20, 2015, the Special Master determined that the additional materials did not provide a basis for reconsidering her original findings and denied Glasgow's motion (Doc. 4-4).

Despite having signed and submitted an irrevocable Opt-In Form certifying that she waived all rights to pursue her claims in court, on February 5, 2015, Plaintiff Charleen Glasgow, through her counsel, Mr. Weinberg, directly filed a

complaint in the Pradaxa MDL claiming injuries and damages related to deceased Ronald D. Glasgow's alleged Pradaxa use (Doc. 1).

Thereafter, BIPI filed the subject motion to dismiss (Doc. 4). BIPI contends that by voluntarily signing and submitting the Opt-In Form, Glasgow and her counsel (1) expressly acknowledged, agreed, and certified that they were expressly waiving all rights to pursue any claims in court; (2) acknowledged and agreed that the Special Master was to resolve all "claims, appeals, or objections," and that the Special Master's decisions would be final and binding; and (3) agreed and certified that the opt-in election was irrevocable. Accordingly, BIPI argues, Glasgow is precluded from pursuing the instant complaint and her claims must be dismissed with prejudice.

In response, Glasgow raises a number of arguments. The Court addresses each in turn below.

### III. ANALYSIS

#### A. Alleged MSA Modification

Glasgow contends that the terms of the MSA were modified after she opted-in to the settlement agreement. Specifically, Glasgow references an email from an employee of the claims administrator regarding the administration of the MSA's terms. In response to an inquiry from counsel regarding a deficiency notice, the employee notes an updated requirement in the administration of the MSA's terms that was agreed to by the parties. The employee explains that submitted medical

records must demonstrate the bleeding event or other injury occurred while the claimant was taking Pradaxa. According to Glasgow, this is a material alteration, executed in violation of the express terms of the MSA,[3] and as a result, the MSA is not enforceable.

Glasgow's contentions are not well taken. The referenced email simply notes an updated policy in the administration of the MSA terms. The updated policy clarifies that claimants must demonstrate they ingested Pradaxa at the time of the alleged injury. In other words, claimants must provide evidence that they are legally entitled to recover under the settlement.

This is not a material alteration in the terms of the MSA. Contracts "are enacted against a background of common-sense understandings and legal principles that the parties may not have bothered to incorporate expressly but that operate as default rules to govern in the absence of a clear expression of the parties' intent that they not govern. *Wal-Mart Stores, Inc. Associates' Health and Welfare Plan v. Wells* 213 F.3d 398, 402 (7th Cir. 2000). Implicit in any settlement is the concept that a claimant cannot participate unless he or she is legally entitled to do so. In the pharmaceutical product liability context, a claimant is legally entitled to participate in a settlement by virtue of the fact that he or she actually ingested the drug in issue at the time of the alleged injury. Absent such a requirement, fraudulent claims would prevail. The parties need not expressly

---

[3] The MSA provides that it may not be changed or amended except by a written agreement signed by all the parties. MSA ¶ 12.2 and 12.5.

state that fraudulent claims will not be honored. The "alteration" referenced by the plaintiff is merely an administrative requirement that prevents fraudulent claims.[4]

Nonetheless, considering the MSA as a whole, it is evident that the parties only intended to allow recovery for those claimants who ingested Pradaxa at the time of the alleged injury. As BIPI notes, both the Initial Claimant Identification Certification Order (MSA, Ex. 2 ¶2(e)) and Initial Claimant Identification Certification (MSA, Ex. 3, Column E) require counsel to certify in good faith that a "Bleed Confirmed While Using Pradaxa." *See also* MSA ¶ 3.5(e). These terms plainly demonstrate an intent on the part of the parties that claimants must have ingested Pradaxa at the time of the alleged injury. "The primary goal in construing a contract is to give effect to the intent of the parties." *Premier Title Co. v. Donahue*, 765 N.E.2d 513, 516 (Ill. App. 2002). "When interpreting a contract, a court must consider the document as a whole, rather than focusing upon isolated portions." *Id.*

The Court also notes that the alleged modification is wholly irrelevant to this particular plaintiff. Glasgow established that decedent ingested Pradaxa at the time of his death and was not denied participation in the settlement because she failed to meet the proximity of usage requirement. Rather, as Glasgow admits, she was denied participation in the settlement because she failed to timely submit her

---

[4] Further, as BIPI argues, even if there was an improper modification, the MSA would not somehow "no longer exist." Rather, the improper modification would be invalid, and the prior MSA, unmodified, would stand. *See, e.g., Robinson v. Ada S. McKinley Cmty. Servs., Inc.,* 19 F.3d 359, 364 (7th Cir. 1994).

Claims Package to the Claims Administrator. Thus, the alleged modification is entirely immaterial to the resolution of BIPI's motion to dismiss.

### B. Waiver of Right to Pursue Claim in Court

Glasgow alleges that the submission of the Opt-In Form was not an irrevocable waiver of her right to pursue her claim in court. Her argument rests on the claim that the term "irrevocable" is ambiguous because the MSA could be terminated if the number of claimants did not meet certain thresholds articulated in the MSA. The Court fails to see how the right-to-terminate clause renders the term "irrevocable" ambiguous. The term is neither obscure nor "susceptible to more than one reasonable meaning." *Platt v. Gateway Int'l Motorsports Corp.*, 813 N.E.2d 279, 283 (Ill. App. 2004) (holding that "[w]here the contract is clear, its interpretation is a question of law to be determined from the terms of the contract"). To the extent that Glasgow is attempting to argue the right to terminate clause raises a mutuality of obligation issue, such an argument cannot stand. A mutuality of obligation issue arises when one party has an unfettered right to terminate the contract. *Schwinder v. Austin Bank of Chicago,* 348 Ill. App. 3d 461, 473 (Ill. App. 2004). That is not the case here. The right to terminate was conditioned upon a matter outside the control of BIPI – the percentage of claimants who elected to opt-in to the settlement agreement.

Glasgow also claims that "[t]he only remedy" for failing to submit her case is "to preclude participation in the Settlement." This argument fails to consider the

MSA as a whole. Under Paragraph 7.7 of the MSA, failure to submit a claim package, seek an extension to do so, or meet an extension will, absent good cause, result in the denial of the right to participate in the settlement. However, Paragraph 7.7 does not state that preclusion from participation in the settlement is the only repercussion. Further, Paragraph 7.7 does not undermine the plain language of the Opt-in form and the MSA, which provide that by opting-in, a claimant is precluded from filing a lawsuit such as the one presently before the Court. A fair reading of the Opt-In agreement and the MSA clearly indicates that opting in precludes the subsequent filing of a lawsuit.

**C. Lack of Consideration**

Glasgow also contends that the MSA lacked sufficient consideration. The Court agrees with BIPI and rejects this argument out of hand. The promise to pay a claim in lieu of litigation is clearly sufficient consideration. *See, e.g., Wilson v. Hoffman Group, Inc.*, 546 N.E.2d 524, 530 (Ill. 1989) ("Generally, anything of detriment to one side, or benefit to the other, may constitute sufficient consideration to support a settlement."); *Johnson v. Hermanson*, 582 N.E.2d 265, 267 (Ill. App. 1991) ("[t]he mutual concessions of termination of the litigation constituted sufficient and valid consideration to support the settlement agreement").

## IV. CONCLUSION

For the reasons discussed herein, Glasgow's contractual arguments relating to the enforceability of the MSA are not well founded. The Court finds that Glasgow unequivocally waived her right to pursue any claim in this Court by opting-in to the MSA. Accordingly, her claims are subject to dismissal with prejudice and BIPI's motion to dismiss is **GRANTED**. As this action is not properly before the Court, Glasgow's motion to compel is **DENIED.**

The Court **DISMISSES** the above captioned cases **WITH PREJUDICE** and **DIRECTS** the **CLERK OF THE COURT to ENTER JUDGMENT ACCORDINGLY**.

**IT IS SO ORDERED.**

Signed this 21st day of April, 2014.

Digitally signed by David R. Herndon
Date: 2015.04.21 13:45:34 -05'00'

United States District Court